AO 106 (Rev. 04/10) Application for a Search Warrant

AUTHORIZED AND APPROVED/DATE: ___EMJ 4.15.25___

# UNITED STATES DISTRICT COURT

## for the

### Western District of Oklahoma

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>INFORMATION ASSOCIATED WITH DOUBLELIST USERNAME<br>"MORELKA," EMAIL ADDRESS "M179007RB@GMAIL.COM," AND<br>TELEPHONE NUMBER "(405) 777-9952" THAT IS STORED AT<br>PREMISES CONTROLLED BY DOUBLELIST | )<br>)<br>)<br>)<br>)<br>)   Case No. MJ-25- 227-CMS |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is attached and incorporated by reference herein.

located in the _____Middle_____ District of _____Florida_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached and incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. s. 2422(b) | Attempted Coercion and Enticement of Minors |
| 18 U.S.C. s. 2260A | Commission of a Sex Offense by a Registered Sex Offender |
| 18 U.S.C. s. 2252A(a)(2) & (b)(1) | Attempted Receipt of Child Pornography |

The application is based on these facts:

See the attached affidavit of FBI Special Agent David Garrison, which is incorporated by reference herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 USC § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

David Garrison, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: April 16, 2025
_____

_____
*Judge's signature*

City and state: Oklahoma City, Oklahoma

CHRIS M. STEPHENS, U.S. MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, David Garrison, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I make this Affidavit in support of an application for a search warrant for information associated with a certain Doublelist account with the username "morelka," the email address "m179007rb@gmail.com," and the telephone number 405-777-9952 (hereinafter, the **"TARGET ACCOUNT"**) that is in the custody or control of Doublelist, a company that is headquartered at 607 Celebration Avenue, Celebration, Florida 34747.

2.     The information to be searched is described in the following paragraphs and in Attachment A. This Affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41 to require Doublelist to disclose to the government the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate the items described in Section II of Attachment B.

3.     The facts of this Affidavit will show that, between July 26, 2024 and January 24, 2025, RONNIE ALLEN BARTON ("BARTON"), who is the registered holder of the **TARGET ACCOUNT**, committed the crimes of attempted coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b), commission of a sex offense by a registered sex offender, in violation of 18 U.S.C. § 2260A, and attempted receipt of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2) and (b)(1).

4.     I have been employed as a Special Agent of the Federal Bureau of Investigation ("FBI") since June of 2005 and have been assigned to the Oklahoma City FBI Field Office since January of 2013. During that time, I have conducted a wide variety of investigations, including cases involving child pornography and sexual exploitation of children.

5.     The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This Affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.     The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction," as defined in 18 U.S.C. §§ 2711 & 3127. Specifically, the Court is a district court of the United States that has jurisdiction over the offenses being investigated. *See* 18 U.S.C. §§ 2711(3)(A)(i) & 3127(2)(A)(i).

## BACKGROUND ON DOUBLELIST

7.     Based on my training and experience, I am familiar with the social media and communication platform called Doublelist, and I have participated in child exploitation investigations involving this platform. I have also spoken with other experienced law enforcement agents who have investigated criminal conduct occurring on this platform, and I have researched the platform and its capabilities on the Internet. Based on this experience, I know the following information about Doublelist.

8.     Doublelist has the ability to maintain information associated with the web history of its users. Such information is materially relevant in child exploitation

investigations, as it may help in identifying websites used by subjects to obtain child pornography and locate victims.

9.    Doublelist allows its users to establish accounts, which they can then use to communicate with other Doublelist users. To use Doublelist, a user creates an account and uses the account to communicate with other Doublelist users. When signing up for a Doublelist account, the user must agree to Doublists's Terms of Service.[1]

10.    I also know Doublelist requires users to provide basic contact information to Doublelist, either during the account registration process or thereafter. The information may include the user's contact e-mail addresses and telephone numbers. Doublelist may also retain Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the user ID or IP address on Doublelist, which could further assist law enforcement in confirming the location of the offense conduct and/or the offender.

11.    Typically, Doublelist users create "posts," which consist of a brief title, such as "Looking for like-minded individuals," followed by a description of the desired activity, such as "Local to the OKC area. Been active with my 'littles'[2] for a few years. Looking for folks who share that interest and who I can watch being active with them as

---

[1]    Doublelist's    Terms    of    Service    may    be    accessed    online    at https://doublelist.zendesk.com/hc//en-us/articles/20874001957911-Website-Guidelines-Code-of-Conduct.

[2] The term "littles" is commonly used by individuals who wish to communicate their sexual interest in juveniles covertly.

well." Doublelist users can then reach out and engage in private message chats by responding to posts that they find interesting.

12.     Social networking providers like Doublelist typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Doublelist users may communicate directly with Doublelist about issues relating to their account, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Doublelist typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any action taken by the provider or users as a result of the communications.

13.     The computers or servers of Doublelist are likely to contain all of the material just described, including stored electronic communications and information concerning subscribers and their uses of Doublelist, such as account access information, transaction information, and account activation.

## **PROBABLE CAUSE**

14.     On July 26, 2024, Online Covert Employee 6862 ("OCE") posted the following on the website Doublelist:[3]  "Finding myself more and more interested in

---

[3] Doublelist is an online website based in Celebration, Florida.  Its home page states that it is where people can "[c]onnect with straight, gay, bi and curios!"  Its mission statement

watching others spend time with and enjoy my 'littles.'  Open-minded with no limits."  On July 26, 2024, BARTON, utilizing the username, "morelka," engaged in a Doublelist direct message chat conversation with the OCE utilizing the **TARGET ACCOUNT**.  The conversation is summarized below.

15.     On August 28, 2024, Doublelist returned administrative subpoena information for the **TARGET ACCOUNT**.  Contained within the returns were posts made on Doublelist, from the **TARGET ACCOUNT**, from February to July of 2024.  The "verified user phone number" associated with the posts and the **TARGET ACCOUNT** was listed as 405-777-9952.[4]  Open-source research into the phone number 405-777-9952 showed the number belonging to BARTON beginning in February of 2019.  Additionally, as of July 31, 2024, the Oklahoma Department of Corrections Sex Offender Registration listed BARTON's telephone number as 405-777-9952.  On October 16, 2024, in response to a subpoena request for subscriber information from August 11 to September 11, 2024, Verizon returned results for the subscriber of 405-777-9952, which confirmed the information was listed under BARTON's name.

---

reads, "[t]o be a SAFE community where you can learn, explore and enhance your sexual side."

[4] On the Doublelist FAQ page, in response to a question regarding the verification of phone numbers, the response states, "[w]e may occasionally ask you to verify your account with a phone number.  We only allow real cellular number and landlines to be used for phone verifications.  Please allow up to 5 minutes for the code to arrive."

16.     On July 26, 2024, BARTON, utilizing the **TARGET ACCOUNT,** began the direct message chat conversation with the OCE by stating, "48 ddf swm here with 7c. I'd like to know more about your 'littles.'"[5]  The OCE responded, "Hey.  Sure.  Have access to a 9 yr old step-daughter and 11 yr old niece."  BARTON asked for an address, to which the OCE replied, "I set em up at motels."  BARTON replied, "The hotel next to the ta truck stop on council would be great if you could."  After asking for and being denied pictures of the OCE's "girls," BARTON asked, "Can you at least describe them some and what can and can't be done to them?"

17.     After the OCE replied with physical descriptions of the "girls" and descriptions of what they generally do with the men they meet up with, BARTON asked, "Either of them suck?"  Soon after, BARTON chatted, "Can't wait to see them" and asked, "condoms required?"  BARTON also asked, "What's the biggest they have had in them?"[6] BARTON later added, "Well, I was hoping this was for tonight or tomorrow, but I'll definitely be waiting."

18.     On July 30, 2024, after a further chat discussion utilizing the **TARGET ACCOUNT** about meeting up for the purpose of BARTON engaging in sexual activity with the OCE's "girls," BARTON chatted, "Well, weekends are best for me."  After the

___

[5] On dating websites and personal ads, "ddf" and "swm" typically mean "drug disease free," and "straight white man," respectively.  Additionally, "7c" is a descriptor for the user's penis size.

[6] Typically, when users ask this question on a sexual or dating themed website or private messenger application, they are asking about the biggest sized penis that has been inserted into a female's vagina.

OCE asked BARTON what the "girls" could expect from him, BARTON replied, "I really need a good blow, other than that, I'm open." The OCE indicated he would find out from his "ex-wife" when he would be granted access to the "girls" again.

19.    On August 13, 2024, utilizing the **TARGET ACCOUNT**, BARTON sent the OCE a chat asking, "How are things" and told the OCE how he needed "female help." BARTON went on to chat, "Seems like everyone here is fake." The OCE replied, "Getting harder and harder to fins someone who shares y same 'interests,' if you know what I mean." BARTON replied, "I never heard anything back from you about it." The OCE replied, "Lost access to the girls for a bit. Should be able to have them with me again in a couple of weeks."

20.    On August 26, 2024, utilizing the **TARGET ACCOUNT**, BARTON reached out to the OCE and chatted, "so when are you available?" The OCE replied, "I can have em [the "girls"] starting the 12th and 13th of next month." BARTON replied, "Friday evenings are my only free time." BARTON went onto describe how he "would love mff.[7] I also feel I should make it enjoyable for them, so I'm trying to find out what they like best or if there is something they want to try. Or if there is something particular you want to see done." BARTON went on to ask, "How do they taste" and then added, "Can't wait." BARTON also asked, "Have they tried anal" and added, "I'd love to start out watching them play with each other and double bj."[8] BARTON added, "Would love

---

[7] In text or chatting language, "mff" means "male, female, female."

[8] In chatting or texting language, "bj" typically means "blowjob."

having my balls licked and sucked while I'm inside something tight" and "I really want to see them naked."

21.    On September 9, 2024, and September 15, 2024, BARTON reached out to the OCE again utilizing the **TARGET ACCOUNT**. BARTON asked, "How have things been going?" and "How's it going?"  Between those dates and September 27, 2024, BARTON and the OCE exchanged chats about the weather and family.  After that, BARTON informed the OCE in a chat, "Let me know when you're ready to play."  The OCE responded by letting BARTON know his "access to the girls" was limited to Thursdays and Fridays.  BARTON responded with, "Friday evenings are best for me."  The OCE replied, "Wasn't sure if you were still interested.  BARTON replied, "Yeah."

22.    BARTON next suggested a date to meet of October 11, 2024, since he got off work early that day.  The OCE informed BARTON that he could not do that day because he had plans for that weekend that could not be changed.  BARTON replied "np, I was just thinking that I'll have to grab a shower after work before I meet."  He added a chat a few minutes later, "Unless they'd wanna shower with me in the motel...Lol."  On October 18, 2024, utilizing the **TARGET ACCOUNT**, BARTON sent the OCE a chat reiterating that he was free Fridays after 5 p.m.

23.    On November 8, 2024, BARTON reached out to the OCE again utilizing the **TARGET ACCOUNT**, asking "What's up."  On November 12, 2024, BARTON stated, "I wanna hear about the fun you and the girls have been having."  Later that day, he added, "Since I haven't had the chance, I wanna hear about it."  After the OCE responded with, "Nothing to tell, honestly."  BARTON responded the next day with, "Available Friday?"

After the OCE replied with, "What did you have in mind?" BARTON replied with, "Wanting to play." The OCE replied, "The girls are ready." BARTON replied, "Just let me know when and where."

24.    On November 19, 2024, the OCE, utilizing Doublelist, suggested to BARTON to meet up with the juvenile females on the evening of Friday, November 22, 2024. BARTON, utilizing the **TARGET ACCOUNT**, replied, "Sounds good." On December 5, 2024, after the proposed meet with BARTON did not occur, BARTON reached out to the OCE with the message, "Guess it was a no go. Well, just let me know." On December 11, 2024, the OCE replied, "Hey man, sorry, thought it was a no go on your end." On December 18, 2024, BARTON replied to the OCE, "No, any Friday evening is good for me, I was waiting for you to confirm and tell me time and place."

25.    On January 8, 2025, BARTON, utilizing the **TARGET ACCOUNT**, reached out to the OCE again and chatted, "Just let me know." On January 15, 2025, BARTON and the OCE engaged in a series of chats. The OCE stated, "Hey man, the girls and I are free Friday the 24th, what time works for you?" BARTON replied, "Anytime after 5pm." BARTON also chatted, "Please send me some pics." The OCE replied, "Does 6pm work?" BARTON replied, "Perfect," and then added, "I know you don't like to send them but I'd really like to see nude pics."

26.    On January 17, 2025, utilizing Doublelist, the OCE and BARTON engaged in a series of chats. The OCE replied to BARTON, "I know man, you know we're into the real thing," and then added, "where do you want to meet?" BARTON, utilizing the **TARGET ACCOUNT**, replied, "Wherever in OKC is convenient for you, I'm not picky."

The OCE replied, "Cool, I'll let you know." BARTON then responded, "Ok, main reason I asked about pics this time is cause cops can't send those kind of pics and I was just trying for my safety." On January 18, 2025, the OCE, utilizing Doublelist, replied to BARTON, "Yeah, I get it. But it's for the girls safety and mine. I've been burned to much. Sorry man, if this isn't going to work, that's cool." Later the same day, BARTON replied, "I'm ready, I was just trying to make sure."

27.     Through additional chats, BARTON and the OCE set up to meet at the Comfort Inn and Suites near Interstate 40 and Meridian Avenue in Oklahoma City, Oklahoma, on Friday, January 24, 2025 at 6:00 p.m. On the day of the scheduled meet, BARTON and the OCE engaged in a series of chats. The OCE stated, "I'll be picking up the girls later today. Looking forward to it." BARTON, utilizing the **TARGET ACCOUNT**, replied, "Ok." BARTON continued, "Let me know when you get your room. I won't have internet after I head that way."

28.     After the OCE notified BARTON that he successfully checked into the motel, BARTON, utilizing the **TARGET ACCOUNT**, replied, "Ok, I'm still kinda nervous about cops but I'm ready. Is there a way to prove it's safe, like I don't know, walk around with them so I can see that they are there?" The OCE replied, "I'm nervous too. I'm not comfortable with that. The girls and I are excited, we'll be here." Around the time of these chat exchanges, physical surveillance observed BARTON, driving his known vehicle, enter the motel parking lot and park his vehicle. Shortly thereafter, BARTON was arrested at the motel after exiting his vehicle near a side door entrance.

29.     Following his arrest, BARTON, after waiving his *Miranda* rights and signing a *Miranda* waiver, gave a voluntary interview.   During the course of the interview, BARTON admitted to utilizing the username "morelka" when engaging in online activities. He further stated that his phone number was 405-777-9952 and had been for a number of years.  He further stated that he had not traveled outside the state of Oklahoma for a number of years.[9]

30.     After further questioning, BARTON admitted to having the **TARGET ACCOUNT** with Doublelist and, specifically,  to engaging with an individual on that site who advertised his "littles."   BARTON stated that he learned and believed these "littles" were actual juvenile females, whom the Doublelist individual was "making available" for sexual purposes.   BARTON further admitted to continuing his online engagement with this individual for a number of months and, at one point, asking for "inappropriate pictures," which was clarified as pictures containing child pornography.   BARTON further admitted to agreeing to meet with the Doublelist individual and to knowing he would have the juvenile females with him.   Throughout the course of this entire interview, BARTON denied many of the facts with which he was confronted; however, ultimately, BARTON admitted the facts as stated in these Paragraphs.

---

[9] He added the only time he had even left the Union City-El Reno-OKC area, within the last few years, was to travel to Guthrie, Oklahoma for family matters.

## CHILD PORNOGRAPHY COLLECTOR CHARACTERISTICS

31.     The following indicates characteristics of child pornography collectors that I have learned through training, working multiple investigations involving child pornography, and from other law enforcement officers with a background in child pornography investigations:

        a.      The majority of individuals who collect child pornography are persons who have a sexual attraction to children. They receive sexual gratification and satisfaction from sexual fantasies fueled by depictions of children that are sexual in nature.

        b.      The majority of individuals who collect child pornography collect sexually explicit materials, which may consist of photographs, magazines, motion pictures, video tapes, books, slides, computer graphics or digital or other images for their own sexual gratification. The majority of these individuals also collect child erotica, which may consist of images or text that do not rise to the level of child pornography but which nonetheless fuel their deviant sexual fantasies involving children.

        c.      The majority of individuals who collect child pornography often seek out like-minded individuals, either in person or on the Internet, to share information and trade depictions of child pornography and child erotica as a means of gaining status, trust, acceptance and support. The different Internet-based vehicles used by such individuals to communicate with each other include, but are not limited to,

12

P2P, e-mail, e-mail groups, bulletin boards, IRC, newsgroups, instant messaging, and other similar vehicles.

d.    The majority of individuals who collect child pornography maintain books, magazines, newspapers and other writings, in hard copy or digital medium, on the subject of sexual activities with children as a way of understanding their own feelings toward children, justifying those feelings, and finding comfort for their illicit behavior and desires. Such individuals rarely destroy these materials because of the psychological support they provide.

e.    The majority of individuals who collect child pornography often collect, read, copy or maintain names, addresses (including e-mail addresses), phone numbers, or lists of persons who have advertised or otherwise made known in publications and on the Internet that they have similar sexual interests. These contacts are maintained as a means of personal referral, exchange or commercial profit. These names may be maintained in the original medium from which they were derived, in telephone books or notebooks, on computer storage devices, or merely on scraps of paper.

f.    The majority of individuals who collect child pornography rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect from discovery, theft, and damage their collections of illicit materials. These child pornography images are often maintained for several years and are kept close by, usually at the possessor's residence, inside the possessor's

vehicle, or, at times, on their person, to enable the individual to view the child pornography images, which are valued highly.

## **CONCLUSION**

32.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving the warrant on Doublelist.  Because the warrant will be served on Doublelist, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

33.     Based on the above-stated facts, I believe there is probable cause to believe that BARTON committed violations of 18 U.S.C. § 2422(b), 18 U.S.C. § 2260A, and 18 U.S.C. §§ 2252A(a)(2) and (b)(2).  Specifically, I believe BARTON utilized the **TARGET ACCOUNT** to commit the crime of attempted coercion and enticement of minors. Accordingly, there is probable cause to believe that evidence of that criminal offense is located in the **TARGET ACCOUNT**, and this evidence, listed in Attachment B to this Affidavit, incorporated herein by reference, is contraband, the fruits of crime, or things otherwise possessed, which is or has been used as the means of committing the foregoing offenses.  As described in the probable cause section, there is probable cause to believe RONNIE ALLEN BARTON violated the aforementioned statutes.  I, therefore, respectfully request the attached warrant be issued authorizing the search and seizure of the items listed in Attachment B.

Respectfully submitted,

David Garrison
Special Agent
FBI

Subscribed and sworn to before me on April  16  , 2025.

CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A**

### **Property to Be Searched**

This warrant applies to information associated with the Doublelist account for username "morelka," associated with the email address "m179007rb@gmail.com," and the telephone number 405-777-9952, (the "**TARGET ACCOUNT**"), that is stored at premises owned, maintained, controlled, or operated by Doublelist a company headquartered at 607 Celebration Avenue, Celebration, Florida 34747.

# **ATTACHMENT B**

## **Particular Things to be Seized**

**I.    Information to be Disclosed by Doublelist.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Doublelist, including any messages, records, files, logs, or information that have been deleted but are still available to Doublelist, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Doublelist is required to disclose the following information to the government for the **TARGET ACCOUNT**" for the time period from July 1, 2024 through January 24, 2025, as described in Attachment A:

A.    All stored communications and other files in Doublelist's possession (to include, if available, account access information, event histories including dates and times, connection dates, times, and locations, connection IP information, message content, graphic files, attachments, etc., further detailed below), whether physical, stored on electronic media, or temporarily extant on any computer or server, reflecting communication to or from the above Doublelist account.

B.    All files, including text, video, and photograph files, that have been created and/or accessed, sent, or received via the above Doublelist account, or that are controlled by user accounts associated with the above Doublelist account.

C.    The types of services used by the account.

D.    All connection logs and records of user message activity, including:

i.    Transmitter/Sender identifiers (i.e., addresses and/or IP address);

ii.    Connection date and time;

iii.    Method of connection (telnet, ftp, http);

iv.    Data transfer volume;

v.          Username associated with the connection and other connection information, including the Internet Protocol address of the source of the connection;

vi.         Account subscriber identification records;

vii.        Other user account associated with, referenced in, or accessed by the above Doublelist account;

viii.      Address books, contact lists and "my friends" if available; and

ix.         Records of files or system attributes accessed, modified, or added by the user.

E.     All records and other evidence relating to the subscriber(s), customer(s), account holder(s), or other entity(ies) associated with the above Doublelist account, including, without limitation, subscriber name, user names, screen names (i.e., display names) or other identities, addresses, residential addresses, business addresses, and other contact information, telephone numbers or other subscriber number or identifier number, billing records, information about the length of service and the types of services the subscriber or customer utilized, and any other identifying information, whether such records or other evidence are in electronic or other form. Such records and other evidence include, without limitation, correspondence, and other records of contact by any person or entity about the above-referenced account, the content associated with or relating to postings, communications, and any other activities to or through the above Doublelist account, whether such records or other evidence are in electronic or other form.

All records pertaining to communications between Doublelist and any person regarding the user or the user's Doublelist account(s), including contacts with support services and records of actions taken. Doublelist is hereby **ORDERED** to disclose the above information to the government within 14 days of issuance of this warrant.

**II.    Information to be Seized by the Government.**

All information described in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. § 2422(b), 18 U.S.C. § 2260A, and 18 U.S.C.

§§ 2252A(a)(2) and (b)(1), involving the user of the **TARGET ACCOUNT**, including, for each account or identifier listed in Attachment A, information pertaining to the following matters:

A.   The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s).

B.   The identity of the person(s) who communicated with the account about matters relating to the production, distribution, receipt, possession, or access with intent to view of child pornography, including the online enticement of minors or threats to minors to engage in sexual activity and sending images and videos and/or traveling to engage in sexual activity.

C.   The identification of third-party accounts associated with the account that could be used to produce or distribute child pornography, including both others involved in the enticement or threats or coercion of children and trafficking or possession of child pornography, as well as the minor victims of this scheme, including records that help reveal their whereabouts.

D.   The identification of other accounts that were linked to the account.

E.   Chat logs and interactions with acquirers of sexually explicit material involving minors or apparent minors or individuals attempting to engage in sex acts or sexual contact with minors or apparent minors.

F.   Evidence of requests for the production or live-streaming of child pornography.

G.   Sexually explicit messages or interactions with minors or apparent minors.

H.   Images that constitute child pornography or child erotica.